UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| v. | § § | EP-15-CR-01946-FM(5) |
| JAVIER ENRIQUE BARRAZA MIRANDA, | § § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION**

In November 2015, the Government charged Defendant Javier Enrique Barraza Miranda and other alleged members of a drug-trafficking organization in Mexico with various counts for drug trafficking and money laundering. *See* Indictment, ECF No. 1. Following failed attempts to locate and arrest him in Mexico, Defendant was arrested in Costa Rica in October 2022 and extradited to the United States in August 2023.

Pending before the Court is Defendant's motion seeking to dismiss the charges against him, in which he claims that the Government's purported lack of diligence in capturing him resulted in an unjustifiable pretrial delay that violated his Sixth Amendment right to a speedy trial. *See* Mot. at 1–27, ECF No. 1678. The Honorable Senior District Judge Frank Montalvo referred Defendant's motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b). For the reasons below, the Court **RECOMMENDS** that the motion be **DENIED**.

### I. BACKGROUND

In 2009, Defendant was arrested and convicted in state court for attempting to purchase approximately 500 pounds of marijuana from an undercover officer. Resp. in Opp'n, Ex. B, at ¶ 12 [hereinafter, Ex. B as Papp Aff.], ECF No. 1697-2. A joint-agency investigation in September

2011 later revealed that Defendant allegedly procured marijuana and laundered drug proceeds for a drug-trafficking organization in Mexico. *Id.* at ¶¶ 9–11. Upon concluding his state-prison sentence in 2012, Defendant was deported to Mexico. *Id.* at ¶ 13. Thereafter, his wife, Anabel Meraz, continued to live in a residence in El Paso, Texas, that she and Defendant purchased in 1995. *See* Mot. at 13, Ex. 1 (Meraz Decl.).

On November 4, 2015, the Government filed the Indictment against Defendant and eight co-defendants, Indictment, ECF No. 1, as well as a motion to seal the Indictment (ECF No. 24) which the Court granted, Order, ECF No. 33. Specifically, the Government charged Defendant in (i) Count One, with conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana; and (ii) Count Three, with possession with intent to distribute 100 kilograms or more of marijuana. *See* Indictment at 1–3. Two weeks later, the Government entered Defendant's arrest warrant, his photograph, and other identifying information into the National Crime Information Center ("NCIC") database. *See* Resp. in Opp'n, Ex. A, at 3 [hereinafter, Ex. A as Zartman Decl. ¶ 9), ECF No. 1697-1.

On May 4, 2016, the Government filed a superseding indictment that added thirteen other co-defendants and additional counts for drug trafficking and money laundering. *See* Superseding Indictment, ECF No. 251. The Government filed a motion to seal the Superseding Indictment (ECF No. 269) that same day, which the Court granted. Order, ECF No. 281. The Superseding Indictment contained no additional charges against Defendant, nor did it alter the existing ones.

In August 2016, the Government reviewed Ms. Meraz's border-crossing history and Facebook page, and identified her El Paso residence and two vehicles. The Government also found three photos in Ms. Meraz's Facebook page showing her with Defendant in 2016. *See* Zartman Decl. ¶¶ 10–13; Papp Aff. ¶¶ 14–15. That same month, to locate Defendant, the Government

requested, and the Court issued, tracking warrants for the two vehicles she used to cross into Mexico. *See generally* Resp. in Opp'n, Ex. B. The Government was only able to execute one of those tracking warrants, which did not lead to Defendant's location. *Compare id.* at 9–10 (warrant "NOT EXECUTED"), *with id.* at 15–16 (warrant executed on Aug. 12, 2016, at 4:55 a.m.).

In October 2016, a confidential source provided information to the Government about a vehicle that Defendant used to arrive at a meeting in Mexico to discuss drug trafficking. Zartman Decl. ¶ 14. The Government also received other information about Defendant, including his possible addresses in Mexico, from multiple other confidential sources. *Id.* The Government forwarded all this information to the law enforcement attaché in Mexico to locate Defendant. *Id.* Two months later, the law enforcement attaché reported that they failed to locate Defendant. Zartman Decl. ¶ 16.

In February 2017, another confidential source reported having a phone conversation with Defendant to the Government. *Id.* at ¶ 17. The Government asked its multiple confidential sources to report back if they learned anything about Defendant's location. *Id.* at ¶ 18. Between 2018 and 2022, the Government continued to validate Defendant's warrant and to check for updates on his NCIC records each March. *Id.* at ¶ 19. On October 13, 2022, upon learning that Defendant had booked air travel to Costa Rica, the Government requested help from the Costa Rican government to arrest Defendant. Defendant was arrested on October 19, 2022, and later extradited to the United States on August 9, 2023. *Id.* at 4–5 ¶ 20.

On September 6, 2023, Defendant filed the instant motion. *See* Mot., ECF No. 1678. The Government filed its response on October 30, 2023. *See* Resp. in Opp'n, ECF No. 1697.

## II. DISCUSSION

In his motion, Defendant argues that the Government made no reasonable efforts to capture him after filing the Indictment, which resulted in an unjustifiable seven-year pretrial delay that violated his Sixth Amendment right to a speedy trial.[1] Mot. at 2–3. Specifically, he contends that the balancing here of the four-factor test established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), warrants dismissal of the charges against him. *Id.* After due consideration, the Court disagrees.

### A. Legal Standard

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In deciding Sixth Amendment speedy trial claims, courts consider four factors: (1) whether the delay before trial was uncommonly long; (2) whether the government or the defendant is more to blame for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice because of the delay. *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker*, 407 U.S. at 530). None of these four factors constitute "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial," so "courts must . . . engage in a difficult and sensitive balancing process." *Barker*, 407 U.S. at 533.

---

[1] In the last sentence of his motion, Defendant further contends that the Government also violated "his *statutory* . . . right[] to a speedy trial." Mot. at 11. But Defendant's motion contains no factual or legal argument regarding any violation under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* As the Fifth Circuit has noted, the standard for statutory violations under the Speedy Trial Act "differ[s] substantially from the four-factor test established by the Supreme Court" for constitutional violations of the Sixth Amendment right to a speedy trial. *United States v. Litton Sys., Inc.*, 722 F.2d 264, 269 n.6 (5th Cir. 1984). Therefore, Defendant fails to meet "the burden of proof [in] supporting" his statutory claim under the Speedy Trial Act. *See* 18 U.S.C. § 3162(a)(2).

**B. Application of the *Barker* Four-Factor Test**

***1. Length of the Delay***

In the Fifth Circuit, a delay of a year or more triggers an examination of the other three factors. *United States v. Duran-Gomez*, 984 F.3d 366, 374 & n.7 (5th Cir. 2020). "The longer the delay between indictment and trial extends beyond the bare minimum, the heavier this factor weighs in a defendant's favor[.]" *United States v. Molina-Solorio*, 577 F.3d 300, 305 (5th Cir. 2009).

Here, the parties agree that the post-accusation delay is seven years. Thus, the Court must weigh this factor heavily against the Government and analyze the remaining three *Barker* factors. *See United States v. Bergfeld*, 280 F.3d 486, 489 (5th Cir. 2002) (noting that a delay of over five years weighs "heavily" in defendant's favor); *United States v. Cardona*, 302 F.3d 494, 497 (5th Cir. 2002) (finding first factor, an "extraordinary delay of over five years," to weigh heavily in defendant's favor).

***2. Reason for the Delay***

The cause of the delay is often the "most important" factor in a court's speedy trial analysis—it is "'the flag all litigants seek to capture.'" *United States v. Herrera*, 534 F. Supp. 3d 727, 736 (S.D. Tex. 2021) (cleaned up) (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)). "The burden is on the government to assign reasons to justify the delay." *Amos v. Thornton*, 646 F.3d 199, 207 (5th Cir. 2011) (internal quotations and citations omitted). Different reasons are entitled to different weight:

> At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the [government]. At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the [government]. Between these extremes fall unexplained or negligent delays, which weigh against the [government], but not heavily.

*Duran-Gomez*, 984 F.3d at 374. "If the government diligently pursues a defendant from indictment to arrest, a speedy trial claim will always fail without a showing of actual prejudice." *Cardona*, 302 F.3d at 497 (quoting *Bergfeld*, 280 F.3d at 489).

Here, Defendant argues that the pretrial delay resulted from the Government's negligence because "[i]t took no actions to locate him," simply "adopt[ing] a . . . lying-in-wait strategy" by putting an arrest warrant out while hoping that he returned to the United States for his arrest. Mot. at 5–6, 8. But contrary to his contentions, the Government *did* make reasonable efforts to locate and arrest Defendant as evinced in its exhibits, which include a declaration from the leading agent and two unsealed warrant application packets. *See* Resp. in Opp'n, Exs. A and B.

Shortly after indicting Defendant in November 2015, the Government entered Defendant's arrest warrant and his information into the NCIC database. *See* Zartman Decl. ¶ 9. A few months later, the Government obtained Ms. Meraz's border-crossing history and reviewed her Facebook page to locate Defendant. *See* Zartman Decl. ¶¶ 10–13; Papp Aff. ¶¶ 14–15. Upon identifying Ms. Meraz's El Paso residence and the two vehicles she used to cross into Mexico to meet with Defendant, the Government obtained two vehicle tracker warrants on August 8, 2016, and executed one of them three days later. *See* Resp. in Opp'n, Ex. B at 9–10; 15–16. Although it failed to locate Defendant in Mexico, the Government continued to validate the arrest warrant, use its confidential sources, follow any possible leads to Defendant's location, and remain in communication with the law enforcement attaché in Mexico during the following years. Zartman Decl. ¶¶ 14–19; *see also United States v. Herrera*, 534 F. Supp. 3d 727, 738 (S.D. Tex. 2021) (considering diligent the Government's efforts for 13 years to locate defendant overseas, including seeking the help of Nicaraguan authorities and conducting regular checks of NCIC database to confirm that defendant's warrant was still valid and that he was still wanted). Upon learning that

Defendant had booked air travel to Costa Rica in October 2022, the Government immediately requested the Costa Rican government's help in arresting and extraditing Defendant. Zartman Decl. ¶ 20. And as Defendant presents nothing to suggest that the 10-month period between his arrest and extradition falls outside the typical timeframe for extraditions from Costa Rica, the Court cannot attribute such delay to government negligence. *See United States v. Reumayr*, 530 F. Supp. 2d 1200, 1206 (D.N.M. 2007) ("[F]oreign countries extraditing defendants to this country are entitled to follow the extradition procedures established by their laws, and the United States is not responsible in a Sixth Amendment sense when those laws and procedures create delays, however long.").

Even so, Defendant posits that the Government's failure to capture him was self-inflicted because it: (1) deported Defendant in 2012; (2) failed to learn of his air travel within Mexico; and (3) never made any effort to notify Defendant or his wife of the sealed charges against him at his El Paso residence. Mot. at 5–7. In support, Defendant points to his wife's declaration, the tax receipt and warranty deed for the El Paso residence, and some of his air travel tickets within Mexico. *See id.* at 13–26. But Defendant misses the mark.

First, Defendant's deportation in 2012 is irrelevant to the *Barker* analysis because the Sixth Amendment right to a speedy trial "attaches when a person is arrested, indicted or otherwise charged"—in this case, November 4, 2015. *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003) (quoting *Doggett*, 505 U.S. at 655). "Claims of pre-indictment delay are considered under the Fifth Amendment, while claims of post-indictment delay are considered under the Sixth Amendment." *United States v. Bishop*, 629 F.3d 462, 466 (5th Cir. 2010); *see also United States v. Harrison*, 918 F.2d 469, 473 (5th Cir. 1990) ("[T]here is no [S]ixth [A]mendment right to a

speedy indictment" and "[t]he primary safeguard of [a defendant's] rights [pre-indictment] is the statute of limitations.").

Second, Defendant presents no evidence suggesting that the Government's failure to learn about his air travel within Mexico resulted from negligence. "An investigation is not unreasonable simply because it misfires or fails of its purpose, or because other measures would have been more fruitful." *United States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015). "[C]ourts should consider the diligence of the government's efforts based on what was known to the government at the time of the investigation, not what is known by hindsight after the defendant has been apprehended." *Id.* Indeed, the Sixth Amendment only requires that the Government make a "diligent, good-faith effort" to locate and arrest a defendant, not "to exhaust all conceivable avenues" in doing so. *United States v. Machado*, 886 F.3d 1070, 1080 (11th Cir. 2018) (quoting *United States v. Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986)).

Even when assuming that the Government's failure resulted from negligence, Defendant presents no evidence suggesting how such negligence "actually lengthened the delay" of which he now complains. *Moreno*, 789 F.3d at 80 ("[N]egligence does not weigh in favor of the defendant unless it actually lengthened the delay. . . . [W]ithout some identifiable causal connection between the failure of reasonable diligence and delay, the government's negligence—however deplorable or unprofessional—[is] not a 'reason for the delay.'" (quoting *Barker*, 407 U.S. at 530)). It is not as if Defendant's case had "slipped through the cracks" because of a government omission that resulted in multiple missed arrest opportunities. *See, e.g., United States v. Erenas-Luna*, 560 F.3d 772, 775 (8th Cir. 2009) (attributing three-year delay to government negligence because failure to input warrant into NCIC record allowed defendant, who was charged 3 months after his

deportation to Mexico in a sealed indictment, to return to the United States and be apprehended multiple times by immigration officials without law enforcement ever executing the warrant).

And third, although Defendant argues that the Government's "deliberate" decision to seal the charges against him and not notify him of them contributed to the delay, Mot. at 5, nothing in his motion shows—much less suggests—that the Government acted in bad faith intending "a deliberate delay to disadvantage the defense," *Duran-Gomez*, 984 F.3d at 374 (quoting *Goodrum*, 547 F.3d at 258). Nor does Defendant explain how such "deliberate" decision hindered his capture in Mexico due to negligence. If anything, "the Government's reason for sealing the [charges] and delaying trial against [Defendant] was a valid one": prevent the disclosure of the charges against him and other alleged members of a drug trafficking organization in Mexico for fear it would frustrate the Government's attempts to arrest them. *See United States v. Hayes*, 40 F.3d 362, 365 (11th Cir. 1994) ("The Government was attempting to apprehend Hayes' co-defendant, Thom, who was living in Zimbabwe. The indictment was sealed because the Government feared that Thom would frustrate its attempts to secure his arrest and deportation if he were aware of it.").

Defendant also reads too much into those cases he cites to contend that courts have imposed on the Government a "*duty to notify*" defendants of the charges against them "once it becomes evident that the defendant[s] cannot be arrested by surprise." Mot. at 6–7 (emphasis in original). At best, those cases merely suggest that when the Government makes *no serious effort* to arrest a defendant (which is not the case here), the least it could do is to notify the defendant of the charges against him and request his voluntary return to the United States to surrender. *See, e.g., United States v. Velazquez*, 749 F.3d 161, 180 (3d Cir. 2014) ("The sum total of its activity was limited to checking the NCIC eight times and, perhaps, placing Velazquez on the 'Most Wanted' list for the Philadelphia DEA office."); *United States v. Mendoza*, 530 F.3d 758, 764 (9th Cir. 2008) ("[T]he

record is silent as to any efforts by the government to apprehend Mendoza beyond merely entering Mendoza's arrest warrant in the law enforcement database . . . ."); *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999) ("Reasonable diligence in this case would have started with contacting Brown's attorney, pursuant to the agreement made between the attorney and the FBI, so that he could surrender his client to the authorities. The FBI's indirect attempts to apprehend Brown caused the case to languish on fugitive status for years."); *United States v. Shelton*, 820 F. Supp. 461, 466 (W.D. Mo. 1992) ("The government did not put on any evidence why the warrant, which was delivered to the United States Marshal, was not executed. . . . There was no ongoing investigation, no co-defendants, and no indication that the defendant was about to go into hiding."); *United States v. Judge*, 425 F. Supp. 499, 504 (D. Mass. 1976) ("[T]he Government knew of defendant's whereabouts but made no effort to inform him that he was under indictment or to bring him to trial."). In sum, the second factor favors the Government and undercuts the first factor because its efforts throughout the years were not unreasonable.

### 3. *Assertion of Speedy Trial Right*

"An assertion of the right to a speedy trial is a 'demand for a speedy trial.' This assertion will 'generally be an objection to a continuance or a motion asking to go to trial.'" *Duran-Gomez*, 984 F.3d at 378 (quoting *United States v. Frye*, 489 F.3d 201, 211 (5th Cir. 2007)). The Fifth Circuit has noted that "'mere assertion' of the right does not automatically cause this factor to weigh in a defendant's favor." *United States v. Molina-Solorio*, 577 F.3d 300, 306 (5th Cir. 2009). But "[i]f a defendant waits too long to assert his right, his silence will be weighed against him." *Frye*, 489 F.3d at 211 (quoting *United States v. Parker*, 505 F.3d 323, 329–30 (5th Cir. 2007)).

Here, the parties agree that Defendant asserted his right to a speedy trial upon filing this motion on September 6, 2023, a few weeks after his initial appearance. The Government also

presents no evidence to dispute Defendant's assertion that he was unaware of the charges against him before his arrest. *See* Mot. at 2, 4–5. So, the third factor favors Defendant. *See Molina-Solorio*, 577 F.3d at 306 (construing lack of evidence about when defendant knew of his indictment in favor of defendant).

### 4.    *Prejudice Resulting from Delay*

As a threshold inquiry before evaluating the fourth factor (prejudice), the Court must use the first three *Barker* factors "to determine whether the defendant bears the burden to put specific evidence of prejudice (or whether it is presumed)." *Bergfeld,* 280 F.3d at 490. If the first three factors strongly favor the defendant, prejudice is presumed; if they do not, the defendant must show actual prejudice. *Id.* at 488. For example, the Fifth Circuit has held that a delay longer than five years gives rise to the presumption of prejudice "when at least five years of the case's total delay is due to the government's negligence or bad faith and the defendant asserted his speedy trial right." *Duran-Gomez*, 984 F.3d at 379.

Here, the presumption of prejudice does not apply "[b]ecause the first three [*Barker*] factors do not weigh *heavily* in [Defendant's] favor." *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (emphasis added). True, there is a seven-year delay here and Defendant timely raised his speedy trial right. But the Government's diligence in pursuing Defendant abroad throughout the seven years, together with the "lack of any evidence of bad faith[,] preclude[s] a presumption of prejudice." *United States v. Valencia-Quintana*, 136 F. App'x 707, 710 (5th Cir. 2005). Thus, the Court must hold Defendant to his burden of showing that actual prejudice exists.

"'Actual prejudice' is assessed in light of the three following interests of the defendant: (1) 'to prevent oppressive pretrial incarceration'; (2) 'to minimize anxiety and concern of the accused'; and (3) 'to limit the possibility that the defense will be impaired.'" *United States v. Harris*, 566

F.3d 422, 433 (5th Cir. 2009) (quoting *Barker*, 407 U.S. at 532). But Defendant fails to meet his burden here because his motion contains no argument on actual prejudice. Indeed, Defendant ends his discussion of the fourth *Barker* factor with the presumption of prejudice without arguing actual prejudice in the alternative. Accordingly, on balance, the consideration of the *Barker* factors shows that the pretrial delay here did not violate Defendant's Sixth Amendment right to a speedy trial.

### III.   CONCLUSION

For all these reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** Defendant Javier Enrique Barraza Miranda's Motion to Dismiss (ECF No. 1678).

So ORDERED and SIGNED this 30th day of November 2023.

ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**